IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRITTANY BULLARD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-24-258-STE |
| MARTIN O'MALLEY,<br>Commissioner of the<br>Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

**I.      PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 14-26). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 25, 2022, the application and amended onset date. (TR. 12, 36). At step two, the ALJ determined Ms. Bullard suffered from the following severe impairments: obesity, fibromyalgia, back disorder, cardiomyopathy, hypertension, bilateral knee disorder, status post right wrist injury, PTSD, anxiety, and major depressive disorder. (TR. 16). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 17).

At step four, the ALJ concluded that Ms. Bullard retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger with her right upper extremity. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can relate to supervisors and co-workers on a superficial work basis. The claimant can have no contact with the general public. The claimant can adapt to a work setting.

(TR. 19). At step four, after determining that Plaintiff had no past relevant work,[1] the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 55-57). Given the limitations, the VE identified three "light" jobs and three "sedentary" jobs from the Dictionary of Occupational Titles that Plaintiff could perform. (TR. 56-57). The ALJ then adopted the VE's testimony and concluded, at step five, that that Ms. Bullard was not disabled based on her ability to perform the identified jobs. (TR. 26).

### III.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

---

[1] TR. 25.

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.   ISSUE PRESENTED

On appeal, Ms. Bullard alleges the ALJ erred in evaluating Plaintiff's need for an assistive device. (ECF No. 10).

## V.   THE ALJ'S EVALUATION OF PLAINTFF'S NEED FOR AN ASSISTIVE DEVICE

Plaintiff alleges that the ALJ failed to properly consider her use of a cane and its potential effects on her RFC. (ECF No. 10). The Court agrees.

### A.   Evidence Relating to Plaintiff's Need for an Assistive Device

In October 2021, Plaintiff's physician Dr. W. John Haddad, stated that "due to patient knee instability, she was evaluated and thought to benefit from a quad cane to prevent fall [and] we will order it." (TR. 483). Indeed, in an October 27, 2021 physical therapy note, Dr. Haddad stated:

> Pt had marked L quad and hamstring weakness compared to R side. It is likely this is more responsible for her L knee buckling than ligament deficiencies, which are reported. Pt donned hospital socks independently; therapist placed gait belt around pt. Pt transferred sit to stand independently. Therapist instructed pt in use of cane in R hand (contralateral side to the weak leg) and to advance the cane with the weak leg to give extra support during stance phase. Started with a large base single point cane. Pt reported some improvement in her gait and feelings of stability. Pt tried large base quad cane, which pt really like the feel of for taking weight off the weaker L side. Discussed with pt that a cane can only handle -5% of a pt's weight, that it is mostly a balance aid; pt verbalized understanding. Pt ambulated 80'x2 w/large base quad cane with seated rest break in between. Pt did have several instances of the L knee giving weight, one pt recovered from herself, one was CGA by therapist. Pt did lean slightly heavily on the large base quad cane in R hand, giving her a jerky gait, but

4

this should smooth as pt becomes more accustomed to using an assistive device.

(TR. 501).

At the administrative hearing on May 22, 2023, Plaintiff testified that she used a cane, based on her physician's recommendation that she do so "as needed." (TR. 38-39). The ALJ further inquired regarding Plaintiff's use of the cane and she testified that she used a cane "probably a total of a couple of weeks out of the month." (TR. 39). Finally, in function reports, Ms. Bullard noted use of the cane on "days [she was] not well (dizzy or trouble breathing)" or "when [her] heart [wa]s acting up." (TR. 242, 259).

### B. Error in the ALJ's Consideration of Plaintiff's Need for an Assistive Device

Social Security Ruling 96-9p provides that assistive devices such as walkers will be found medically necessary when there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Furthermore, a prescription is not required for a hand-held assistive device to be medically necessary, only "medical documentation establishing the need for the device." *Staples v. Astrue*, 329 F. App'x 189, 191 n. 1 (10th Cir. 2009).

In the administrative decision, the ALJ mentioned Plaintiff's cane use by acknowledging what Plaintiff had stated at the hearing regarding the same. (TR. 20). However, the ALJ did not further discuss Plaintiff's cane use or its potential effect on the RFC or her ability to work. For two reasons, the omissions constitute error.

5

First, although the ALJ acknowledged Plaintiff's reports of cane use, as she testified to at the hearing, the ALJ failed to explain why he obviously rejected the same. "[While] [t]he ALJ is not required to accept Plaintiff's testimony about her walker prescription at face value, . . . at a minimum the ALJ must explain why he rejected that testimony." *Thompson v. Berryhill*, No. CIV-17-923-R, 2018 WL 3427652, at *3 (W.D. Okla. July 16, 2018). Following the ALJ's recitation of Plaintiff's subjective complaints, including her testimony, the ALJ recited approximately 3 pages of medical evidence, without mention of any evidence related to Plaintiff's cane use, and then simply stated that claimant's statements about the intensity, persistence, and limiting effects of her symptoms, were inconsistent "because the record simply fails to document consistent symptoms or related functional limitations which would not be accounted for in the residual functional capacity above." (TR. 22). But this statement is puzzling, considering Plaintiff's testimony which was supported by documented findings from Dr. Haddad, who noted that Plaintiff suffered from "knee buckling" and a "jerky gait." *See supra*. Thus, the Court concludes that the ALJ's "explanation" insufficiently addresses Plaintiff's balance issues or need for a cane.

Second, the ALJ erred by failing to discuss whether the cane was "medically required," which he was required to do in light of the fact that the record contained "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, at *7; *see supra*; *see also Wood v. Berryhill*, No. CIV-18-670-STE, 2019 WL 470914, at *4 (W.D. Okla. Feb, 16, 2019) (noting that a physician's assistant's observation regarding a plaintiff's "weak gait requiring a cane" constituted a medical opinion regarding

6

the medical necessity of an assistive device); *see also Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (holding that "an ALJ is not required to discuss every piece of evidence," but must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

The ALJ acknowledged Plaintiff's testimony regarding her use of the cane, but dismissed the need, for reasons which are not apparent from the record. Any explanation the ALJ provided was deficient, and in light of the medical evidence regarding the "medical necessity" of the cane, the ALJ had a duty to discuss the same, especially in light of the SSA's statement that "the occupational base for an individual who must use [an assistive] device for balance . . . may be significantly eroded." SSR 96-9p, at *7.

The Commissioner attempts to defend the ALJ's lack of explanation regarding Plaintiff's cane use, relying on:

- A lack of indication by Plaintiff regarding her cane use at various medical appointments and

- Prior administrative findings from State Agency physicians, who had noted Plaintiff's cane use, but "neither indicat[ing] any need for [a cane] in [their findings]." and

(ECF No. 12:3-9).

But based on Plaintiff's testimony and the medical documentation establishing Plaintiff's need for the cane, the ALJ was required to discuss Ms. Bullard's need for the same. The ALJ's failure to do so constitutes legal error. *See Thompson v. Berryhill*, 2018 WL 3427652, at *3 (finding legal error based on the ALJ's failure to discuss Plaintiff's need for an assistive device, stating "The ALJ acknowledged 'claimant's use of a

7

walker/cane at times,' but erred by offering no reason to discount that use as medically unnecessary, despite 'considerable evidence . . . to counter the agency's position.') (internal citation omitted). The error is especially egregious in light of the VE's testimony that all of the "light" jobs the VE had identified for an individual with Plaintiff's RFC would be eliminated if the individual were to need to walk with a cane "40% of the time" and that *perhaps* such individual could perform the sedentary job of "sewing machine operator," but that job was neither indicated for Plaintiff by the VE, nor adopted by the ALJ at step five.

Furthermore, the ALJ himself did not rely on prior administrative findings to reject Plaintiff's medically-documented need to use a cane or her related testimony; and the Court is not permitted to supply *post hoc* rationales to uphold the Commissioner's decision. See *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (the Court should not "substitute [its] judgment for that of the Commissioner.").

Ultimately, the Court concludes that the ALJ's failure to explain his treatment of Plaintiff's need for a cane constitutes legal error and remand is warranted. *See supra, Thompson v. Berryhill*, (reversing based on the ALJ's failure to discuss evidence regarding Plaintiff's use of a cane or explain why he had rejected it or had failed to include it in the RFC); *McAnally v. Berryhill*, No. CIV-16-459-M, 2017 WL 4080696, at *3 (W.D. Okla. Aug. 29, 2017), *report and recommendation adopted*, No. CIV-16-459-M, 2017 WL 4079407

(W.D. Okla. Sept. 14, 2017) (recommending reversal because the ALJ failed to address an opinion which stated that the claimant required a cane for walking, an opinion which was "at odds" with the claimant's ability to perform "light" work).

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on August 13, 2024.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE